

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2008

# Johnson v. Townsend

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1324

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Johnson v. Townsend" (2008). *2008 Decisions*. Paper 699.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/699

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 07-1324
_____

DAVID JOHNSON,

Appellant

v.

BENJAMIN TOWNSEND, Corrections Food Service Supervisor;
FRANKLIN TENNIS, Individually, and in his official capacity as Superintendent of
SCI-Rockview; ALBERT WINKLEMAN, Individually, and official capacity as Assistant
Food Service Manager; GARY SOWASH, Individually, and official capacity as Corr.
Food Service Manager; SHARON BURKS, Individually, and official capacity as Chief
Grievance Officer; ANTHONY W. RUSS, Individually, and official capacity as Major
Officer of Professional Responsibility; JEFFREY A. RACKOVAN, Individually, and
official capacity as Grievance Coordinator and Asst. Superintendent; D. LEATHERS,
Individually, and official capacity, Capt. of Security; RICK HOOVER;
SHANNON DULANEY

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 03-cv-02277)
District Judge: Honorable A. Richard Caputo

_____

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2008

Before: RENDELL, JORDAN and ROTH, Circuit Judges

(Opinion Filed: August 7, 2008)
_____

OPINION
_____

PER CURIAM,

David Johnson, proceeding pro se, appeals the District Court's orders granting defendants' motions to dismiss and for summary judgment. We affirm.

In December 2003, Johnson filed the underlying civil rights action naming various administrative officials and correctional officers from SCI-Rockview. After being granted leave, Johnson filed an amended complaint on March 3, 2004 and a second amended complaint on December 21, 2004 against the following defendants: Benjamin Townsend, Food Service Supervisor; Jeffrey Rackovan, Grievance Co-ordinator and Assistant Superintendent; J. Leathers, Captain of Security; Frank Tennis, Superintendent; Sharon Burks, Chief Grievance Officer; Albert Winkleman, Assistant Food Service Manager; Gary Sowash, Food Service Manager; Rick Hoover, Counselor; and Shannon Dulaney, Psychologist. Johnson alleged that he had been: (1) retaliated against for exercising his First Amendment rights; (2) subjected to excessive force, deliberate indifference, and cruel and unusual punishment in violation of the Eighth Amendment; (3) denied his right to due process of law in violation of the Fourteenth Amendment; and (4) subjected to state law torts of intentional infliction of emotional distress, assault, battery and negligence.

Basically, Johnson asserted that he had been assigned to work in the prison's kitchen as a clerk by defendants Townsend and Sowash in October 2001. According to Johnson, under threat of misconduct and in violation of Department of Corrections

2

("DOC") policy, these defendants required him to work nine and one-half (9½) hours a day, seven days a week while only paying him for a 40-hour work week. On May 27, 2003, after contacting then-Deputy Superintendent Tennis and the employment office about his situation, Johnson was removed from his job in the culinary department and reassigned to the tin shop. The following day, Johnson filed a grievance (# 52784) complaining about, inter alia, his work schedule. A second grievance (#55535) was filed on June 28, 2003, wherein Johnson alleged that Townsend had retaliated against him for filing the first grievance, and that he had been threatened by other inmates who were informed by Townsend that he was the reason behind new restrictions placed on workers in the culinary department. Johnson further asserted that, due to his fear of harm from Townsend and other inmates, he went to the culinary building only occasionally and, resultantly, suffered weight loss, loss of sleep, blurred vision and the reoccurrence of migraine headaches. With respect to defendants Dulaney and Hoover, Johnson claimed that these defendants retaliated against him for his grievances and for the filing of the underlying civil action by requiring him to repeat sex offender treatment and providing him with a negative review prior to his appearance before the Parole Board in June 2004. The actions of Dulaney and Hoover formed the bases of grievance #80993.

After a preliminary screening of Johnson's amended complaint by the Magistrate Judge to whom it was referred, the District Court dismissed Johnson's claim for monetary damages against all defendants in their official capacities in accordance with 28 U.S.C. §

3

1915A(b)(2) on the basis of Eleventh Amendment immunity. Additional claims were disposed of in an order entered on November 8, 2005, wherein the District Court adopted the Magistrate Judge's Report recommending that the defendants' motion to dismiss be granted in part and denied in part. In particular, the following claims were dismissed for failure to state a claim: 1) all due process claims against the defendants with respect to Johnson's allegations of being required to work on his days off and to work without compensation; 2) Johnson's Eighth Amendment claims against defendant Townsend; 3) the due process and state law claims against defendants Sowash and Winkleman; and 4) his state negligence claims against defendants Leathers, Tennis, Sowash and Winkleman.

Defendants thereafter filed a motion for summary judgment, in which they argued, inter alia, that Johnson did not present his grievances through final review as required by the DOC process and 42 U.S.C. § 1997e(a). In a third Report issued on August 22, 2006, the Magistrate Judge recommended that summary judgment be granted in favor of defendants with respect to the First Amendment retaliation claim against defendant Townsend alleging that he created a potentially hostile environment. The Magistrate Judge concluded that, because Johnson failed to appeal grievance #55535 to final review, he did not exhaust his administrative remedies and the claim was now procedurally defaulted. The same conclusion was given for the remainder of Johnson's claims, which, according to the Magistrate Judge, were either not properly appealed through the grievance system to final review (e.g., grievance #80993 regarding the actions of Dulaney

4

and Hoover), or not presented in any grievance whatsoever (e.g., the claims against defendants Tennis, Burks, and Leathers). Given that all the claims over which the District Court had original jurisdiction were subject to dismissal, the Magistrate Judge recommended that the court decline to exercise supplemental jurisdiction over Johnson's remaining state law claims against Townsend. Over Johnson's objections, the District Court adopted the Magistrate Judge's Report and Recommendation in a Memorandum Opinion and Order entered on December 27, 2006, granted defendants' motion for summary judgment with respect to Johnson's remaining federal law claims and dismissed the remaining state law claims. This timely appeal followed.

We have jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291, and exercise plenary review over the District Court's orders granting a motion to dismiss and for summary judgment. See Debiec v. Cabot Corp., 352 F.3d 117, 128 n.3 (3d Cir. 2003); Broselow v. Fisher, 319 F.3d 605, 607 (3d Cir. 2003). In considering a Rule 12(b)(6) motion, a court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008), quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002). See also Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1969 n. 8 (2007). The "[f]actual allegations [of the complaint] must be enough to raise a right to relief above the speculative level."

Phillips, 515 F.3d at 234, (quoting Twombly, 127 S.Ct. at 1965). With respect to a grant of summary judgment, we must affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Federal Rule of Civil Procedure 56(e), concerning the requirements for opposing a motion for summary judgment, provides that Johnson, as an adverse party, "may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Having carefully reviewed the record and the parties' submissions, we conclude that judgment was properly entered in favor of defendants for essentially the reasons given by the District Court.

Johnson raises several contentions on appeal. Many of them can be disposed of with little discussion. We find no error with the District Court's decision to dismiss Johnson's state law claims against defendants Sowash, Winkelman, Tennis and Leathers. The doctrine of sovereign immunity, codified at 1 Pa.C.S. § 2310, protects the Commonwealth and its employees from such a suit for monetary damages unless the cause of action falls within one of several statutory exceptions not implicated here, see 42 Pa.C.S.A. § 8522, or the individual's conduct falls outside the scope of the employee's employment. As we noted in Brumfield v. Sanders, 232 F.3d 376 (3d Cir. 2000), Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct "within the scope of employment." "According to the Restatement, 'conduct is within the

6

scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master....'" Id. at 380, quoting Restatement (Second) Agency § 228. While Johnson may take issue with the manner in which they performed their duties, we agree with the District Court that defendants Sowash, Winkelman, Tennis and Leathers were acting within the scope of their employment when handling his grievances and work assignments.

Johnson's due process and Eighth Amendment claims relating to the number of days and hours he was required to work fare no better. Johnson basically claims a protected liberty interest in days off from work, hours worked in any given day and adequate compensation. A protected liberty interest can arise either from the Due Process Clause itself or from state law. Asquith v. Dep't of Corrections, 186 F.3d 407, 409 (3d Cir. 1999) (citation omitted). As has previously been determined, however, "[n]o liberty interest traced from the Due Process Clause is implicated if 'the conditions or degree of confinement to which a prisoner is subjected [are] within the sentence imposed upon him' and do not otherwise violate the Constitution." Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002), quoting Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir.2002) (internal quotation marks and citations omitted). We initially note, as did the District Court, that inmates have no federally protected right not to work while imprisoned after conviction, see Ali v. Johnson, 259 F.3d 317, 317 -318 (5th 2001); Tourscher v. McCullough, 184

7

F3d 236, 240 (3d Cir. 1999), nor do they have a constitutional right to compensation. See Murray v. Mississippi Dept. of Corrections, 911 F.2d 1167, 1167 (5th Cir. 1990). Moreover, while there appears to be no question that Johnson – who was compensated for his regular hours as well as a large portion of his excess hours – was required to carry out his duties as a clerk in the culinary department on a work schedule unmatched by most of the prison population, we are not prepared to hold that the amount of his working hours alone exceeded his sentence "in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force" and violated some other constitutional provision. Sandin v. Conner, 515 U.S. 472, 484 (1995).

We further agree with the District Court that Johnson was not deprived of any state-created liberty interest. As the District Court correctly concluded, even assuming *arguendo* that DC-ADM 816 – the DOC policy governing inmate employment and compensation – created a liberty interest in Johnson's compensation and days off or hours worked, the work situation that Johnson found himself in for a 20 month period does not amount to an "atypical and significant hardship." See Id.; see also Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997). Likewise, Johnson's complaints of mental and physical exhaustion are insufficient to bring his work assignment in the culinary department within the Eighth Amendment's prohibition against cruel and unusual punishment absent any indication that he was compelled to perform physical labor which was beyond his strength, endangered his life or health, or caused undue pain, or where there is no

8

allegation that the work assignment was punitive in nature. Berry v. Bunnell, 39 F.3d 1056, 1056-57 (9th Cir. 1994), citing Howard v. King, 707 F.2d 215, 219 (5th Cir. 1983) (Eighth Amendment claim stated where inmate required to work in excess of 56 hours a week in a field for over a year caused continual exhaustion and physical breakdown); Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977) (same for disabled prisoner made to perform manual labor for 90-120 hours per week); Woolsey v. Beto, 450 F.2d 321 (5th Cir. 1971) (same where punitive work assignments given to an inmate suffering from tuberculosis).

Finally, Johnson challenges the District Court's conclusions that he failed to exhaust his Eighth Amendment retaliation claim against defendant Townsend, as well as his claims against defendants Tennis, Burks, and Leathers. An inmate must exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) prior to bringing suit. See Booth v. Churner, 532 U.S. 731 (2001). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The three steps in the Pennsylvania grievance process are: (1) Initial Review pursuant to DC-ADM-804 Part VI.B of the inmate's filed grievance; (2) the first appeal from the Initial Review, or Appeal to Facility Manager pursuant to DC-ADM-804 Part VI.C; and (3) a final appeal, the Appeal to the Secretary's Office of Inmate Grievances and Appeals pursuant to DC-ADM-804 Part VI.D. Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). An inmate's failure to substantially comply

9

with the procedural requirements of the prison's grievance system will result in a procedural default of the issue and effectively bar the inmate from bringing his claim in federal court. Id. at 231.

As explained by the Magistrate Judge, the record evidence shows that the only grievance Johnson filed and exhausted through the final level of review was the claim against Townsend set forth in grievance #52784, which concerned Johnson's allegation that he was being overworked and underpaid. Johnson contends, however, that he combined grievance #55535, alleging retaliation by Townsend, with grievance #52784, and therefore exhausted both grievances. Although Johnson correctly notes that the DOC permits grievances to be combined when "necessary to ... support the claim," see DC-ADM-804 Part VI.A.11, we are not persuaded that Johnson properly invoked this exception in the instant case. While Johnson mentions a general fear of further abuse and aggression from Townsend and other inmates in grievance #52784, his specific claim of retaliation by Townsend for filing the initial grievance is the basis of grievance #55535. Moreover, Johnson's contention that he combined the two grievances is belied by his actions throughout the grievance process. In particular, in his appeal to final review of grievance #52784, Johnson referred to the claim at issue as that presented in a single "grievance" and, in fact, he notified the Chief Grievance Officer that he was pursuing the retaliation claim in a separate grievance. See Exhibit A, page 14 attached to Aplt's Brief. Additionally, Johnson filed his second-step review of grievance #55535 on July 14, 2003.

10

See id. at page 10.  This appeal would have been unnecessary if Johnson had actually combined the two grievances as his appeal of grievance #52784 to final review was filed the very next day on July 15, 2003.  See id. at page 14.

Finally, we do not read the language of the grievance officers in their responses to the appeals of grievance #52784 as excusing any procedural default that Johnson committed with respect to grievance #55535.  Cf.  Spruill, 372 F.3d at 234.  Acting Superintendent Tennis merely responded to Johnson's allegation of a general fear of "further abuse and aggression" from Townsend and other inmates set forth in grievance #52784 by noting that Johnson's "reassign[ment] from Food Service ... should minimize any contact [he has] with Food Service staff or inmates."  See id. at page 6.  Likewise, in addition to referencing only grievance #52784, Chief Grievance Officer Burks noted her decision on final review as one upholding the "responses provided by staff at the institutional level" to Johnson's "request for assistance."  See id. at page 16.  Her decision focused on the issue of compensation given Johnson's allegations of being overworked and underpaid.  There simply is no indication that she also specifically considered the separate issue of retaliation by Townsend.

Johnson's argument that his procedural default for failing to name defendants Leathers, Tennis and Burks in any grievance was also excused is equally unconvincing. "[T]he PLRA exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, __, 126 S.Ct. 2378, 2387 (2006).  While the Supreme Court has noted that

11

"nothing in the [PLRA] imposes a 'name all defendants' requirement," Jones v. Bock, 127 S.Ct. 910, 923 (2007), it has also recognized that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements and not the PLRA, that define the boundaries of proper exhaustion." Under DC-ADM 804.VI.A.1.g, Johnson was required to identify "persons who may have information that could be helpful in resolving the grievance." Spruill, 372 F.3d at 234. While we have held that the prison can excuse an inmate's procedural default by "identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance," id., such is not the situation in the present case where defendant Leathers' response to Johnson's initial grievance was basically limited to addressing Johnson's complaints regarding his work hours and compensation issues. Defendant Leathers informed Johnson on June 11, 2003 that the inmates would no longer be permitted to work on their days off, that calculations for additional hours he worked were being made, and that there was no need for him to be concerned about retaliation by any staff member for the filing of a grievance. See Exhibit A to Aplt's Informal Brief at 3. Similarly, those same issues were the focus of defendant Tennis' response which disposed of Johnson's second-step appeal. Id. at 6.

To the extent that Johnson raised allegations against these defendants that survive the due process and Eighth Amendment analysis set forth previously, those allegations were not properly raised in the filing of grievance #52784 in May 2003 or in the initial

12

appeal filed a month later, and, in fact, they pertain more to the allegations in grievance # 55535 filed on June 28, 2003. Many of the allegations involving these named defendants did not even arise until well after grievance #52784 was disposed of. See, e.g., Johnson's Amended Complaint at ¶ 57 and 68, reproduced in Aples.' Supp. Apx. at 11 and 13, referencing incidents involving defendant Leathers in September 2003 and January 2004. The initial grievance may have alerted officials to a potential problem regarding Johnson's work schedule and compensation claim and the ensuing appeals of his disagreement with the grievance officers' review, but it did not alert them to the specific acts of unconstitutional conduct they allegedly committed. Unlike the situation presented in Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007), it is not at all clear from the grievance responses that each and every one of these other named defendants who were involved in the review process were "fairly within the compass" of grievance #52784 itself.

Accordingly, for the foregoing reasons, we will affirm the judgment of the District Court.